UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDREW WYATT,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:23-cv-01189-CDB (SS)<br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br>(Doc. 17) |

Plaintiff Michael Andrew Wyatt ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 11; hereinafter, "AR") and the parties' briefs (Docs. 17, 19), which were submitted without oral argument. Upon review of the record, the undersigned finds and rules as follows.[1]

# I. BACKGROUND

## A. Administrative Proceedings and ALJ's Decision

On February 28, 2021, Plaintiff filed an application under Title XVI of the Social Security Act, alleging disability beginning September 17, 2019. (AR 192). Plaintiff's claim was denied

[1] Upon consent of the parties to the jurisdiction of a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c)(1), this action was referred to the undersigned for all further proceedings. (Doc. 10).

initially on July 16, 2021, and again upon reconsideration on September 21, 2021. (AR 89-93, 108). Plaintiff requested a hearing before an Administrative Law Judge on September 28, 2021. (AR 110).

Administrative Law Judge ("ALJ") Peter Baum held a hearing on July 11, 2022, wherein Plaintiff, his advocate Nicholas Martinez, and impartial vocational expert ("VE") Cheryl Chandler appeared. (AR 29, 31). ALJ Baum issued an unfavorable decision on August 4, 2022. (AR 10-19). The Appeals Council denied Plaintiff's request for review on June 28, 2023, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1-6). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 416.920(a). (AR 11). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 28, 2021, the application date. (AR 12).

At step two, the ALJ found that Plaintiff had the following medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities: a seizure disorder; left eye blindness since age ten; schizophrenia; and a depressive disorder. The ALJ also found that Plaintiff had the non-severe impairment of hepatitis C. (AR 12).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 13). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[2] The ALJ found moderate limitations in understanding, remembering, or applying information as well as in concentrating, persisting, or

[2] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

maintaining pace; and found mild limitations in interacting with others as well as in adapting or managing oneself. (AR 13-14). Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found the "paragraph B" criteria were not satisfied. (AR 14).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but with non-exertional limitations to simple and repetitive tasks, no work that requires depth perception, no necessary exposure to hazardous machinery or unprotected heights, and no climbing of any ladders, ropes, or scaffolds. (AR 14). In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 416.929 and SSR 16-3p. (AR 14-15). The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical and other evidence of record. (AR 15-18). The ALJ, citing to Plaintiff's hearing testimony and the medical record, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 15-18).

At step four, the ALJ determined that Plaintiff has no past relevant work under 20 C.F.R. § 416.965. (AR 18). The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a hand packager, bagger, and laundry worker. (AR 18-19). The ALJ concluded that Plaintiff had not been under a disability at any time from the alleged onset date through the date last insured. (AR 19).

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a

claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational

factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III. ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. In his motion, Plaintiff asserts that the mental RFC ("MRFC") is not supported by substantial evidence. (Doc. 17 at 13-19). The Court finds that Plaintiff's arguments are more properly directed to whether the ALJ erred in failing to support the MRFC with substantial evidence based on his treatment of medical opinion evidence. Plaintiff also asserts that the ALJ failed to develop the record. *See id.*

### A. Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

///

**B. Parties' Contentions**

Plaintiff asserts that the ALJ did not provide discussion sufficient to describe how the evidence supports the ALJ's conclusion, and failed to explain his reasoning with sufficient clarity to "allow for meaningful review." Plaintiff argues that the RFC omits limitations assessed by the only medical professionals providing opinions on Plaintiff's mental capacity, namely H. Bradley and M. D. Morgan. (Doc. 17 at 13-14; quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), & citing AR 59-62, 81-84). Plaintiff contends that, regarding hallucinations and paranoia, it is "illogical to conclude the presence of delusions and paranoia impair Plaintiff's ability to perform skilled work" but do not impair his "ability to interact appropriately with the public or adapt to abrupt changes," and the ALJ did not cite evidence to support this conclusion. *Id.* at 14-15.

Plaintiff argues that the ALJ failed to articulate any reasoning to not adopt the state agency physicians' findings regarding the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and thus the assessed RFC should have accounted for resulting work limitations. Plaintiff asserts that, because the ALJ found the opinions of the state agency physicians persuasive, the ALJ should have included the moderate limitation in completing a normal workday or workweek without interruptions from psychological symptoms, and to perform at consistent pace without unreasonable number or length of rest periods, into the mental RFC. Plaintiff cites to unpublished authority for the proposition that a limitation to "simple work" is not sufficient to account for this limitation. *Id.* at 15-17. Plaintiff argues that, had the ALJ accounted for this limitation, it would mean that Plaintiff would require too many breaks or absences due to his combination of anxiety attacks and hallucinations. *Id.* at 18 (citing AR 215, 240, 250, 368, 417, 458, 512).

Plaintiff asserts that the MRFC is unsupported because the ALJ did not cite evidence of a "treating or examining medical professional" to support it, and that the ALJ erred in his duty to develop the record because of this, and because Plaintiff did not undergo a consultative examination. *Id.* at 18-19. Plaintiff argues that the ALJ "failed to ask a single question regarding

the frequency, duration or consequences of the episodes," rendering the record "ambiguous regarding the degree to which the hallucinations would interfere with Plaintiff's ability to sustain an ordinary workday." *Id.* at 19.

Defendant asserts that Plaintiff's "largely normal objective medical findings and self reports" and part of the state agency psychologists' opinions support the MRFC finding. (Doc. 19 at 4). Defendant observes that Plaintiff's "mental status examinations documented unremarkable findings," such as "normal alertness, orientation, mood, thought process, intelligence, insight and judgment." *Id.* (citing AR 368, 456-57, 508-09, 552). Defendant notes that the ALJ discussed Plaintiff's self-reports, including where he reported he was good at following written and spoken instructions, and stated he could pay attention from start to finish, and could finish what he starts. *Id.* at 4-5 (citing AR 16-18, 285). Defendant further observes that the ALJ explained that Plaintiff, "despite endorsing psychosis before the relevant period, [] later denied hallucinations and paranoia." *Id.* at 5 (citing AR 16, 18, 38, 368, 455-56, 486, 490, 493, 508-09, 523, 525). Defendant asserts that the ALJ supported his findings as to the opinions of Drs. Bradley and Morgan with substantial evidence, finding them to be supported by and consistent with the medical record. *Id.* at 5.

Defendant asserts that the ALJ found no objective basis for Drs. Bradley and Morgan's findings regarding social and adaptation limitations, and that the opinions referenced "no abnormal objective findings." *Id.* at 6-7 (citing AR 54, 75-76). Defendant notes that, regarding consistency, the ALJ "discussed Plaintiff's inconsistent self-reports and objective medical findings," namely that Plaintiff denied hallucinations and paranoia during the relevant period and discussed elsewhere Plaintiff's "unremarkable mental status examinations." *Id.* at 7 (citing, *inter alia*, AR 456-57, 481, 490, 508-09, 552). Defendant argues that the ALJ accounted for Drs. Bradley and Morgan's "moderate" limitation in completing a normal work schedule, as described in their opinions, through a restriction to "simple, repetitive tasks" as being akin to unskilled work. *Id.* at 8 (citing AR 60, 82).

Defendant asserts that Plaintiff has not shown why additional records are necessary and the ALJ "properly determined that the existent record was not ambiguous." *Id.* at 8-9. Lastly,

Defendant argues that any error was harmless due to the jobs identified at step five involving repetitive work and their descriptions in the Dictionary of Occupational Titles ("DOT") failing to mention "extensive customer-service" work. *Id.* at 9-10.

**C. Opinions of Drs. Bradley and Morgan**

State agency psychologist H. Bradley provided a mental residual functional capacity assessment. (AR 59). Dr. Bradley sets forth that Plaintiff has no "understanding and memory limitations," stating that no compelling evidence in the record suggests as such, but does have "sustained concentration and persistence limitations." These limitations are not significant regarding the "ability to carry out very short and simple instructions" and are moderately limited regarding the "ability carry out detailed instructions" and "maintain attention for concentration for extended periods." (AR 59). Dr. Bradley found Plaintiff not significantly limited as to the following: in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," in his ability to "sustain an ordinary routine without special supervision," in his ability to "work in coordination with or in proximity to others without being distracted by them," in his ability to "make simple work-related decisions," in his ability to "ask simple questions or request assistance," in his ability to "accept instructions and respond appropriately to criticism from supervisors," in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," in his ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," in his ability to "be aware of normal hazards and take appropriate precautions," in his ability to "travel in unfamiliar places or use public transportation," and in his ability to "set realistic goals or make plans independently of others." (AR 60-62).

Regarding the limitation as to maintaining "socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," Dr. Bradley provided that Plaintiff has the "ability to communicate about specific aspects of task-oriented employment and abide by the standards governing basic conduct and appearance that are predominant in many vocational environments," but that " adverse emotional and/or behavioral features of the mental impairment may increase the claimant's risk for reacting ineffectively to the stress of extensive customer-service." (AR 61).

Regarding Plaintiff's ability to "set realistic goals or make plans independently of others," Dr. Bradley provided that no compelling evidence supported limitations on Plaintiff's "capacity to appreciate/adhere to occupational safety guidelines, secure transportation to a jobsite, or do basic planning for work activities," but that Plaintiff's "capacity to adjust effectively to abrupt changes in the work schedule/process is likely limited by the mental impairments." (AR 62).

Dr. Bradley found Plaintiff moderately limited as to the following: in his ability to "interact appropriately with the general public," to "respond appropriately to changes in the work setting," and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 60-62). As to the latter, Dr. Bradley states that Plaintiff is not "seriously limited" in his ability to "attend and persist for 2-hour intervals while accomplishing job tasks consisting of straightforward, recurring, and uniform steps," but that the "mental impairment could cause the claimant to have difficulty maintaining levels of concentration and productivity for skilled work, particularly in work environments requiring multitasking under time pressure." (AR 60).

Dr. Bradley concludes her assessment by stating that "[a]lthough the signs/symptoms of the mental impairments may limit some of claimant's work-related abilities/skills, the sum total of the relevant objective medical evidence suggests that … [Plaintiff] is still capable of performing a variety of work activities over the course of a normal workday/week." (AR 62). Dr. Morgan's findings are the same as Dr. Bradley's; Dr. Morgan states that "[o]verall MER continues to support SRT." *See* (AR 75-76, 81-84).

**D. The ALJ Did Not Support Medical Opinion Findings with Substantial Evidence**

Here, the ALJ formulated the following RFC:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, repetitive tasks, he should not be doing any work that requires depth perception, and he should not be exposed as a necessary part of the job to hazardous machinery or unprotected heights. In addition, he should not be climbing any ladders, ropes, or scaffolds.

(AR 14).

*1. <u>Supportability</u>*

In declining to include certain limitations, the ALJ states that "an inability to perform customer service work and a limited ability to adjust effectively to abrupt changes in a work schedule is inconsistent with and over-restrictive [sic]." The ALJ cites to "reports showing [Plaintiff] denied hallucinations and paranoia and that a review of the neurological system was negative for an altered level of consciousness, aura, dizziness, and headache." (AR 17; citing AR 508-09, 551-52). The ALJ concludes that he "did not adopt these limitations in [his] residual functional capacity finding, as there is no objective basis for them." (AR 17).

Immediately prior to this narrative, the ALJ assesses that Plaintiff's "[difficulty] with skilled work is generally consistent with the claimant's mental impairments and reports showing that at times he experienced some auditory and visual hallucinations with poor insight and judgment," and that both "Drs. Bradley and Morgan also provide support for their finding with specific references to the evidence of record." (AR 17; citing 368, Exs. 1A & 3A)).

The ALJ's reasoning is unclear. In discounting limitations regarding Plaintiff's inability to perform customer service work and adjust to abrupt work schedule changes, the ALJ cites to records showing Plaintiff denied "hallucinations and paranoia." But in crediting limitations regarding skilled work, the ALJ cites to a record that showed, at times, Plaintiff experienced some auditory and visual hallucinations alongside poor insight and judgment. The ALJ does not clarify what distinguishing factor regarding hallucinations in the record led him to credit one set of limitations and discount the other. Indeed, the ALJ states that Drs. Bradley and Morgan "provide support for their finding with specific references to the evidence of record," regarding the limitations on skilled work. However, Drs. Bradley and Morgan provided similar narrative language regarding Plaintiff's inability to perform customer service work and limitations on abrupt changes in work schedule as they do regarding skilled work.

The ALJ cites only generally the opinions of Dr. Bradley and Morgan, without elaboration or pin-cite. Regarding skilled work, Dr. Bradley stated as follows, with Dr. Morgan's language substantially identical:

///

> The claimant's capacity to attend and persist for 2-hour intervals while accomplishing job tasks consisting of straightforward, recurring, and uniform steps is not seriously limited by the presence of the mental impairment. However, the signs/symptoms of the mental impairment could cause the claimant to have difficulty maintaining levels of concentration and productivity for skilled work, particularly in work environments requiring multitasking under time pressure.

(AR 60, 82). Regarding customer service work, Dr. Bradley stated as follows, with Dr. Morgan's language substantially identical:

> The claimant has the ability to communicate about specific aspects of task-oriented employment and abide by the standards governing basic conduct and appearance that are predominant in many vocational environments. However, adverse emotional and/or behavioral features of the mental impairment may increase the claimant's risk for reacting ineffectively to the stress of extensive customer-service.

(AR 61, 83). Regarding abrupt changes in the work schedule, Dr. Bradley stated as follows, with Dr. Morgan's language substantially identical:

> There is no compelling evidence to suggest that the claimant's capacity to appreciate/adhere to occupational safety guidelines, secure transportation to a jobsite, or do basic planning for work activities is especially limited by mental impairment. However, the claimant's capacity to adjust effectively to abrupt changes in the work schedule/process is likely limited by the mental impairments.

(AR 62, 84).

As to the limitations on skilled work, the ALJ states that "Drs. Bradley and Morgan also provide support for their finding with specific references to the evidence of record." (AR 17; citing generally Exhibits 1A & 3A). For this limitation, Dr. Bradley states that the "signs/symptoms of the mental impairment could cause the claimant to have difficulty maintaining levels of concentration and productivity for skilled work." As to the limitation on customer service, Dr. Bradley states that "adverse emotional and/or behavioral features of the mental impairment may increase the claimant's risk for reacting ineffectively to the stress of extensive customer-service." And as to the limitation on abrupt changes in the work schedule, Dr. Bradley states that "claimant's capacity to adjust effectively to abrupt changes in the work schedule/process is likely limited by

the mental impairments."

The ALJ offers no reasoning to distinguish the language used by Drs. Bradley and Morgan regarding these three different limitations. Drs. Bradley and Morgan do not cite to the record nor proffer any quotations from, citations to, or analysis concerning any evidence of record regarding the limitation on skilled work, and nothing appears to separate the language regarding that limitation from the language regarding the other two limitations. The ALJ does not offer a pin-cite to follow regarding any such limitation. A review of the "Additional Explanation" sections of the opinions of Drs. Bradley and Morgan does not provide any obvious support to the ALJ's logic supporting a distinction in the opinions concerning their support for these three limitations. *See* (AR 54, 75). Dr. Morgan states that Plaintiff's "AH/VH are gone thanks to his medication and able to perform his PC every day [sic]" and that Plaintiff "denies AH/VH." (AR 75). However, the ALJ does not offer any reasoning as to how this finding impacts the supportability analysis.

*2. Consistency*

As to consistency with the medical record, the evidence cited by the ALJ does not inform why the ALJ credited the limitations on skilled work but discredited the limitations on customer service work and limited ability to adjust to abrupt changes in work schedule. In support of the limitation on skilled work, the ALJ cites to Exhibit 2F at page three, which is a record by licensed marriage and family therapist Angela Maria Garcia, dated October 5, 2020. (AR 368). The record states that Plaintiff has a history of high levels of anxiety, distractibility, diminished concentration, irritability, and sleep disturbance; the ALJ cites this record in support of the assessment that Plaintiff experienced some "auditory and visual hallucinations." After the citation, the ALJ states that Plaintiff also experienced "poor insight and judgment." (AR 17). The page cited by the ALJ mentions hallucinations involving voices, faces, and "shadow people." (AR 368).

In discounting limitations on customer service work and abrupt work schedule changes, the ALJ cites to a record by nurse practitioner Doxie Telib Palma, dated April 26, 2021, and a record by Sarajinder Bansal, dated May 12, 2022. (AR 508-09, 551-52). The ALJ cites these records for the proposition that there are "reports showing [Plaintiff] denied hallucinations and paranoia and that a review of the neurological system was negative for an altered level of consciousness, aura,

dizziness, and headache." (AR 17). The record dated April 6, 2021, states that Plaintiff "denies hallucinations/paranoia." The record dated May 12, 2022, states Plaintiff was "negative" for "[a]ltered levels of consciousness, [a]ura, [d]izziness and [h]eadache."

The cited records do not provide clear support regarding inconsistency with the limitations opined by Drs. Bradley and Morgan as to customer service work and abrupt work schedule changes. The ALJ does not explain why a lack of hallucinations, paranoia, altered levels of consciousness, aura, dizziness, or headache undermine such limitations. The Court is left to speculate, particularly as the ALJ also states that the record showed Plaintiff, at times, experienced some auditory and visual hallucinations alongside poor insight and judgment. Because these findings do not appear reconcilable in the absence of any reasoning by the ALJ providing further explanation, the Court cannot discern the ALJ's path. *Cf. McRoberts v. Berryhill*, No. 1:16-cv-86 GSA, 2017 WL 2345624, at *12 (E.D. Cal. May 30, 2017) ("Both of these doctors also opined that Plaintiff had higher functioning than what Dr. Fukui had assessed in these areas, … the ALJ afforded theses opinions more weight. The contrasting opinions between Drs. Gauch and Acenas and Dr. Fukui's reports provided a legitimate basis for the ALJ to reject Dr. Fukui's opinions.").

Because the ALJ's reasoning in discounting limitations opined by Drs. Bradley and Morgan regarding customer service work and abrupt work schedule changes is both partially inconsistent with his reasoning crediting limitations on skilled work and insufficient to explain why such limitations are themselves inconsistent with the record, the ALJ erred. *See Jorge L. D. v. Kijakazi*, No. 2:22-cv-09322-BFM, 2023 WL 6049738, at *5 (C.D. Cal. Sept. 15, 2023) ("Thus, while it is true that Plaintiff did not report hallucinations at every treatment visit and that he sometimes reported being in a stable mood, the ALJ himself found that the record was significant for schizophrenia and found that Plaintiff had regularly both reported and been observed displaying symptoms consistent with schizophrenia. Given that finding, the ALJ's explanation for discounting Dr. Ruddock's opinion based on its inconsistency with the treatment records does not have the support of substantial evidence.").

///

///

**E. The ALJ's Lack of Explanation Regarding Attendance Limitations Was Not Improper**

"The Ninth Circuit has held that an ALJ reasonably translated a medical opinion finding moderate limitations in pace and attention, concentration, and adaptation into an RFC for 'simple, routine, repetitive' work, but whether a restriction to such tasks adequately accounts for moderate attendance limitations is less clear." *Tamra W. v. O'Malley*, No. CV 22-9098-JPR, 2024 WL 283684, at *4–5 (C.D. Cal. Jan. 25, 2024) (citing *Stubbs-Danielson*, 539 F.3d at 1174). The undersigned acknowledges that, on this point, the case law in this circuit is split. *See id.*

"Some district courts have found that moderate attendance limitations are not accounted for in an RFC restriction to simple, routine tasks." *Id.* (citing cases). "In contrast, some district courts have found that moderate attendance limitations are adequately accounted for in an RFC restriction to simple, routine tasks." *Id.* (citing cases). Yet other district courts, in a third variety of cases, have found that where a medical opinion does not provide specific restrictions related to attendance, (for example, the number of days or percentage of time a claimant may miss), the ALJ's rejection of the medical opinion as to attendance limitations, without explanation and without any inclusion of limits in the RFC, is not improper. *Id.* (citing cases); *see Braceson W. v. Bisignano*, No. 5:24-cv-01449-SK, 2025 WL 3692142, at *2 (C.D. Cal. Aug. 26, 2025) ("Moreover, because Dr. Donohue provided no quantifiable attendance requirements in her opinion, the ALJ was not required to make up restrictions that are not actually articulated by any medical consultant.") (quotation omitted); *Alexander R. v. O'Malley*, No. CV 23-10167 RAO, 2024 WL 3556161, at *4 (C.D. Cal. July 26, 2024) ("Here, the RFC accounts for the mild to moderate limitation in Plaintiff's ability to comply with job rules such as safety and attendance despite its lack of specific attendance restrictions because Dr. Williamson did not render any specific attendance requirements.").

Here, neither Drs. Bradley nor Morgan identified any specific limitations regarding attendance. For instance, neither state the number of workdays Plaintiff might miss in a month, nor the percentage of work time Plaintiff may miss for the month, nor any number of days Plaintiff may be late or need to leave early. As the state agency examiners did not specifically quantify their opinion as to Plaintiff's limitations regarding attendance, nor elaborate with any particularity

regarding what the opinion of "moderate" limitations entailed, they presumably use the term "moderate" as consistent with the Social Security Administration's definition. *See Tamra W.*, 2024 WL 283684, at *5 ("Because Dr. Chehrazi did not quantify Plaintiff's 'moderate' limitation in attendance, the doctor presumably used the word consistent with the administration's definition.").

A "moderate" limitation is defined by the Commissioner to mean "[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily." *Fergerson v. Berryhill*, No. 5:17-cv-00161-KES, 2017 WL 5054690, at *3 (C.D. Cal. Nov. 1, 2017) (quoting Office of Disability Adjudication and Review, Social Security Administration, Form HA-1152-UC, Medical Source Statement of Ability to Do Work-Related Activities (Mental)); *see Rose M. E. v. Saul*, No. 5:20-cv-01199-AFM, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (same) (citing, *inter alia*, *Fergerson*, 2017 WL 5054690, at *3).

The ALJ, therefore, could have reasonably relied on the Commissioner's definition of the term "moderate" when evaluating the opinions of Drs. Bradley and Morgan, namely to mean that Plaintiff could still satisfactorily function in areas where "moderate" limitations were noted. *See Alicia M. v. O'Malley*, No. 5:23-cv-01281-AJR, 2024 WL 3304519, at *9 (C.D. Cal. Mar. 8, 2024) ("Consequently, the ALJ reasonably could have understood Dr. Donahue's opinion to mean that Plaintiff could still function satisfactorily in the areas where moderate limitations were assessed."); *Rose*, 2021 WL 1612091, at *3 ("the ALJ could reasonably have understood Dr. D'Angelo's opinion as meaning that notwithstanding some limitations, Plaintiff 'can still function satisfactorily' in workplace attendance and in handling the stresses, changes and demands of gainful employment").

Nor do Drs. Bradley and Morgan identify any restrictions regarding attendance elsewhere in their opinions. *See* (Exs. 1A, 3A); *Larkin v. Saul*, 819 F. App'x 535, 537 (9th Cir. 2020) (affirming the ALJ's rejection of workweek limitation in psychologist's opinion and noting that "[w]hile Dr. Comrie said Larkin had 'some limitation with keeping a regular workweek,' nowhere did he quantify what that limitation was—a surprising omission if he meant to say she would miss workdays. Dr. Comrie immediately followed his unspecific 'some limitation' statement with a connecting conjunction: 'but she retains the ability to follow through with routine tasks with

reasonable CPP [concentration, persistence, and pace].'"). In *Larkin*, the examining psychologist stated "three different times, under three different headings, that Larkin would have problems with attendance, punctuality, and completing a regular workweek." *Larkin*, 819 F. App'x at 538 (Berzon, J., dissenting). Further supporting the conclusion in this action, neither Dr. Bradley nor Dr. Morgan mention problems with attendance, punctuality, or completing a regular workweek anywhere else in their opinions. *See* (Exs. 1A, 3A). Drs. Bradley and Morgan both state that Plaintiff is moderately limited regarding the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," but provide no concrete limitations therefor. (AR 60, 82).

Neither Dr. Bradley nor Dr. Morgan elaborates upon the findings regarding any moderate attendance impairments elsewhere in their opinions. In light of these facts, the undersigned finds most applicable herein the aforementioned third variety of cases, finding that where a medical opinion does not provide specific restrictions related to attendance, the ALJ's rejection of the medical opinion as to attendance limitations, without explanation and without any inclusion of limits in the RFC, is not improper. *See Tamra W.*, 2024 WL 283684, at *4–5 (citing cases). As Drs. Bradley and Morgan did not assess or otherwise identify concrete limitations as to Plaintiff's "moderate" impairment regarding attendance, the ALJ was not obligated to explain his omittance of any such limitations from the RFC. *Cf. David S. v. Bisignano*, No. 1:24-cv-03193-ACE, 2026 WL 867764, at *9 (E.D. Wash. Mar. 30, 2026) (distinguishing *Larkin* and noting "[t]he record here is different. In this case, Dr. E and Dr. Comrie opined, without modification, unlike *Larkin*, that Plaintiff 'may miss days of work intermittently.'").

**F. The ALJ Did Not Err In Electing Not to Develop the Record**

Generally, "[t]he claimant has the burden of proving that she is disabled." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Further, "[w]hen a claimant is not

represented by counsel, this responsibility is heightened." *Id.* This is because "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000)). In particular, the ALJ's duty to develop the record is heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Tonapetyan v. Halter*, 242 F.3d 1133, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).

Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); *see Brown v. Berryhill*, 697 F. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the ALJ was not required to re-contact Brown's doctors or further develop the record.").

Under the relevant Social Security Ruling, an ALJ may elect to develop the record by obtaining a consultative examination ("CE"). *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that the Agency "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to ... determin[e] ... [the plaintiff's] claim."). "[T]he Commissioner has broad latitude in ordering a [CE]." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (quotation and citation omitted). Cases that normally require employment of a CE include those where "'additional evidence needed is not contained in the records of [the claimant's] medical sources, and those involving an ambiguity or insufficiency in the evidence [that] must be resolved." *Id.* (internal quotations and citations omitted; alternations in original).

Plaintiff provides only sparse argument in support of his contention that development of the record or a consultative examination was needed due to ambiguity or insufficiency. First, Plaintiff's assertion that because "no examining physician rendered an opinion regarding his functional limitations" the "assessed [MRFC] is unsupported" is without any merit, as is Plaintiff's claim that the MRFC is unsupported because the ALJ cited to no evidence from a "treating" medical professional. (Doc. 17 at 18-19).

Plaintiff cites to authority predating the new regulations. As noted *supra*, because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo*, 871 F.3d at 675.

In support of this argument, Plaintiff cites *Stevenson v. Colvin*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015). The *Stevenson* case is readily distinguishable. First, it involves the previous regulations, which are not applicable here. Therefore, Plaintiff's references to the previous "treating" or "examining" hierarchy regarding medical professionals do not apply. Second, in *Stevenson*, there was a "dearth of medical evidence in the record" as to the degree the plaintiff's spinal impairments impacted his physical RFC, and the ALJ "improperly interpreted the treating records that were available and made an RFC determination based on that raw medical data." *Id.* at *5. There is no such indication here and Plaintiff does not provide any citations or reasoning in support. *Cf. Millner v. Bisignano, Comm'r of Soc. Sec.*, No. 1:24-cv-00495-JLT-SKO, 2026 WL 1492902, at *5 (E.D. Cal. May 28, 2026) ("In fact, the only 'opinions' in the record were that the evidence was insufficient to render an opinion and thus did not constitute opinion evidence at all. It is therefore not entirely clear how the ALJ translated the medical evidence into an RFC.").

* * * * *

In sum, the undersigned finds that the ALJ did not err in refraining from developing the record and was not obligated to explain his omittance of any attendance limitations from the RFC. However, the ALJ failed to provide substantial evidence to discount the medical opinion limitations

regarding customer service work and abrupt work schedule changes.

**G. Remedy**

Plaintiff seeks remand of this case to the Commissioner for further proceedings. (Doc. 17 at 19). Defendant contends that the ALJ's decision should be affirmed. (Doc. 19 at 11). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

In this case, the ALJ erred by failing to offer substantial evidence to discount limitations in medical opinions of record. In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1217. Given this error, the undersigned finds that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein. *See Cabral v. Comm'r of Soc. Sec.*, No. 1:21-cv-00128-CDB (SS), 2025 WL 795978, at *19 (E.D. Cal. Mar. 13, 2025) ("In sum, the ALJ failed to properly consider the supportability and consistency of Dr. Seward's medical opinion before finding it not persuasive such that remand is warranted to address this legal error.").

**IV. CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is GRANTED;
2. The ALJ's decision is REVERSED;
3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

Remainder of This Page Intentionally Left Blank

4. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against Defendant and to then close this case.

IT IS SO ORDERED.

Dated: **July 28, 2026**

UNITED STATES MAGISTRATE JUDGE